IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

EL DORADO SCHOOL DISTRICT     PLAINTIFF

v.     Case No. _____

K. J., by and through his Parent, K.J.W.     DEFENDANTS

## COMPLAINT

### Introduction

1. This is an appeal by the El Dorado School District ("EDSD") pursuant to the Individuals with Disabilities Education Act ("IDEA") from the Arkansas Department of Education Hearing Officer's decision dated June 14, 2021. EDSD is asking the Court to review the administrative record, and to reverse the Hearing Officer's determination that EDSD has violated the IDEA.

### Parties

2. Plaintiff El Dorado School District is a public school district organized and operating pursuant to the laws of the State of Arkansas, and is a "local education agency" as that term is used in 20 U.S.C. § 1401(19).

3. Defendants, K.J. by and through his Parent K.J.W., are residents of Union County, Arkansas. K.J. is a student at El Dorado High School.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) and 34 C.F.R. § 300.516.

5. This action is brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (IDEA) and seeks reversal of the Hearing Officer's decision filed with

the Arkansas Department of Education Special Education Division in Case No. H-20-29 on June 14, 2021. The Hearing Officer's Final Decision and Order is attached as **Exhibit A** to this Complaint.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the El Dorado School District is located in this judicial district, the Defendants reside in this judicial district, and the events giving rise to this action occurred in this judicial district.

### Facts

7. Until March 2020, K.J. was being served under the IDEA in the eligibility category of Specific Learning Disability with deficits in the areas of basic reading skills, math calculation and written expression. K.J.'s individualized education program (IEPs) for the 2018-19 and 2019-20 school years were written to address those deficits and were appropriately implemented by K.J.'s teachers. K.J.W. was an active participant on the IEP Team and agreed with those IEPs at the time they were adopted.

8. The IDEA requires that school districts reevaluate students no less frequently than every three years. The District reevaluated K.J. during the 2019-20 school year based on the outcome of the IEP Team's Existing Data Review (EDR). The method used was one of identifying a "pattern of strengths and weaknesses in performance, achievement, or both, relative to age, State-approved grade level standards, or intellectual development." This is a research-based approach specifically approved by the Arkansas Department of Education.

9. Among the methods approved by the Arkansas Department of Education for determining Patterns of Strengths and Weaknesses, the District uses the Cross-Battery Method. The Cross-Battery Method allows the District to determine whether a student has a cognitive deficit that is related to an academic weakness. In this case, K.J. does not. When, as in this case,

there is no cognitive deficit that is tied to an academic weakness, something other than a specific learning disability must be causing whatever academic problems a student may have.

10. On March 10, 2020, K.J.'s IEP team, with the exception of K.J.'s family, agreed that he should be dismissed from special education and recommended that he should receive services under § 504 of the Rehabilitation Act.

11. K.J.W. filed a Due Process Complaint on April 1, 2020 (Case No. H-20-29). The Due Process Complaint challenged the March 10, 2020 decision by the IEP Team to dismiss K.J. from special education, and also contended, for the first time, that K.J. had been denied a free appropriate public education during the 2018-19 and 2019-20 school years. The District responded, and a Due Process hearing began on July 20, 2010 which consumed 12 hearing days over the course of the next 10 months. Final Decision and Order, pp. 2-3.

12. K.J.W. filed a second Due Process Complaint on August 26, 2020 (Case No. H-21-08). That Due Process Complaint argued that the District violated the "stay put" provisions of the IDEA when it removed K.J. from special education prior to the time K.J.W. filed the first Due Process Complaint. Final Decision and Order, p. 3.

13. K.J.W. filed a third Due Process Complaint on February 17, 2021 (Case No. H-21-24). She argued in that Due Process Complaint that the District violated the "child find" provisions of the IDEA by failing to refer K.J. for special education in the months after the District dismissed him from special education. Final Decision and Order, p. 3.

14. All three Due Process Complaints were assigned to the same Hearing Officer. Final Decision and Order, p. 3.

15. The Hearing Officer appropriately assigned the burden of proof to K.J.W. on all issues in the three Due Process hearings. Final Decision and Order, pp. 33, 36, 45.

16. The twelfth and final day of hearings on the first Due Process Complaint was April 26, 2021. Final Decision and Order, p. 3. The issues in the second and third Due Process Complaints were combined and heard over the following three days, from April 27 to April 29, 2021. In an effort to proceed more efficiently and to limit the size of the record, the Hearing Officer determined that exhibits and testimony introduced during the first hearing would be considered part of the record in the second combined hearing, and vice versa. Final Decision and Order, p. 5.

17. The parties submitted post-hearing briefs regarding all three hearings on June 1, 2021. The Hearing Officer filed her Final Decision and Order with the Arkansas Department of Education on June 14, 2021, and the parties received it the next day.

18. With respect to the first Due Process hearing, the Hearing Officer specifically found that the "District did not deny a FAPE to [K.J.] on account of violation of any procedural issues." The Hearing Officer went on to find, however, that the District denied K.J. a free appropriate public education (FAPE) because his IEPs, although they contained all the required elements, failed to result in adequate progress. Final Decision and Order, pp. 29-30, 33. The Hearing Officer also held that the District dismissed K.J. from special education without doing sufficient testing. Final Decision and Order, p. 38. She ordered a comprehensive evaluation of K.J. as well as 50 hours of compensatory education in the areas of reading, writing and math to be provided during the coming school year outside of the normal school day. Final Decision and Order, pp. 45-47.

19. With respect to the second and third Due Process hearings, the Hearing Officer found for the District, holding that the District did not commit any IDEA violations. Final Decision and Order, pp. 42-43, 44-45, 47.

20. The Hearing Officer found that K.J.'s IEP for 2018-19 to 2019-20 school years contained all of the elements required by the IDEA. Final Decision and Order, pp. 30, 33. She nevertheless decided that those IEPs were not reasonably calculated to provide FAPE based primarily on her view that, in hindsight, K.J. didn't make sufficient progress during those two years. Final Decision and Order, pp. 30, 33.

21. It was error to judge the IEPs in hindsight. IEPs should be judged by looking at what was reasonable at the time the IEP was prepared, not afterward. *See Endrew F. v. Douglas Cnty. Sch. Dist. Re - 1*, 137 S. Ct. 988, 998 (2017) ("The 'reasonably calculated' qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials.")(emphasis supplied).

22. Numerous courts have held that this "Monday morning quarterback" approach is unfair to school districts and not in conformance with the IDEA. *E.g. XXXXX v. Arlington Cnty. Sch. Bd.*, 2021 U.S. Dist. LEXIS 106816 (E.D. Va. June 7, 2021)(noting the Fourth Circuit's affirmance of a district court decision declining to use evidence "to Monday-morning quarterback the school system" because that "would simply not be fair to school districts, whose decisions would be judged in hindsight. . ."; also noting a Third Circuit decision stating that "whether a student was offered a FAPE is determined by looking at what was reasonable at the time the IEP was offered to the student, not in hindsight.").

23. The United States Supreme Court has made it clear that the IDEA does not promise any particular education outcomes. *See Endrew F.*, 137 S. Ct. at 998 (It is an "unobjectionable proposition" that the IDEA cannot and does not promise any particular educational outcome).

24. The Hearing Officer improperly viewed the fact that K.J. had not achieved all of the goals in his IEPs as evidence that the "goals were not appropriate for him or alternatively, that

FEC\10167\0006\8591551.v1-6/30/21

the programming provided by the District was not appropriate to assist the Student in achieving the stated goals." Final Decision and Order, p. 35. IEP goals are exactly that, goals. The Hearing Officer was wrong to judge the IEPs in hindsight in the first place, and equally wrong to judge the IEPs by whether the goals were met, rather than whether they were reasonably calculated to allow K.J. to progress *at the time they were included in his IEPs.*

25. K.J.W. did not meet her burden of proving that K.J. was denied FAPE for the 2018-19 and 2019-20 school years, or that K.J.'s IEPs were not reasonably calculated to allow him to make progress in light of his individual circumstances.

26. The District followed a research based and State approved process, using Cross-Battery Assessment to determine Patterns of Strengths and Weaknesses, in determining that K.J. is no longer eligible for special education. The Hearing Officer had little to say about this process, and instead decided that the District should have tested K.J. in more areas before deciding his eligibility to continue as a special education student. Final Decision and Order, pp. 36-38.

27. The Hearing Officer found that "the evaluation performed by the District in December 2019", which supported the determination that K.J. was no longer eligible for special education, "was woefully inadequate compared to testing completed in previous evaluations of the Student". Final Decision and Order, p. 36. It was error to judge the District's December 2019 evaluation in light of previous evaluations.

28. The IDEA, as well as the Arkansas Department of Education Rules and Regulations, require more comprehensive evaluations in certain situations, such as an initial evaluation, but also counsel against too much testing and allow districts to "pull forward" information from previous evaluations. An initial evaluation to determine for the first time whether or not a student is eligible for special education typically requires more extensive

assessment than subsequent reevaluations where prior assessment data may be available to address required components.

29. K.J.'s IEP Team determined in October 2019 what areas should be evaluated. The Team decided to test K.J. in his "deficit areas" to determine whether he has disabilities that affect his academic performance. K.J.W., who is a member of the IEP Team, agreed with these decisions.

30. Given the Team's decision to test K.J. in his "deficit areas", the regulations designed to prevent a student from being subjected to excessive testing, the testimony of the District's expert that he had never seen a student subjected to as much testing as K.J. has been in this case, and the District's use of a research-based, well accepted, and specifically approved method to determine that K.J. was no longer eligible for special education, the Hearing Officer's finding to the contrary was wrong.

31. K.J.W. did not meet her burden of proving that the District's testing was insufficient to support the IEP Team's decision that K.J. is no longer eligible for special education.

32. K.J.W. did not meet her burden of proving that K.J. was wrongly dismissed from special education.

33. K.J. has previously been diagnosed with ADHD. Based on the observations of K.J.'s teachers, the IEP Team decided that ADHD was not a factor in K.J.'s occasional poor academic performance.

34. No one on the IEP Team, including K.J.W., was concerned about ADHD. K.J.W. agreed with the decision to evaluate K.J. only in the areas that were assessed in the December 2019 reevaluation, and agreed that adaptive behavior rating scales, which would have provided information useful in determining any adverse impact of K.J.'s ADHD diagnosis on his educational performance, were not necessary.

35. Despite K.J.W. failing to meet her burden of proving that ADHD was a factor, the Hearing Officer found fault with K.J.'s IEPs because they did not address "the possible effect of ADHD on the Student's academic performance." Final Decision and Order, pp. 32-33.

36. Notwithstanding the IDEA's emphasis on using multiple measures to evaluate a student, the Hearing Officer's determination that K.J.'s IEPs were insufficient was based primarily on selective iterations of one test—the Brigance. Final Decision and Order, pp. 30-32, 34. The Hearing Officer ignored later Brigance tests which showed that K.J. had made significant progress, as well as the numerous other tests which supported the testimony of the District's psycho-educational evaluator that K.J. had made progress "in all deficit areas".

37. The Hearing Officer ordered the District to have K.J. "comprehensively evaluated" by July 15, 2021 to obtain current information about K.J.'s academic deficits to determine specifically whether K.J. "continues to need special education services". Final Decision and Order, p. 45. Among other things, the comprehensive evaluation must include "assessments aimed at determining the extent to which ADHD may, if at all, contribute to the Student's academic issues". Final Decision and Order, pp. 45-46.

38. In order to meet the Hearing Officer's requirement to consider whether K.J. is eligible for special education, the District would need to consider his potential eligibility under the Other Health Impairment ("OHI") category. That will require a doctor's physical examination as a part of the required comprehensive assessment, so it is not just a matter of completing a psycho-educational evaluation by the August 15, 2021 timeline, but requires the parent to follow through with a doctor's visit for that purpose.

39. The Hearing Officer ordered the District to complete "all evaluations" by August 15, 2021, and to hold an IEP Meeting by August 15, 2021 to discuss the results of the

comprehensive evaluation and determine whether special education programming is necessary. Final Decision and Order, p. 46.

40. The Rules and Regulations of the Arkansas Department of Education require that a comprehensive evaluation for the purpose of determining special education eligibility in the category of Specific Learning Disability must include classroom observations. The requirement in the Hearing Officer's order that the comprehensive evaluation must include assessments aimed at determining the extent to which ADHD may, if at all, contribute to K.J.'s academic issues, would also necessitate classroom observations. The first day of school for El Dorado High School is August 17, 2021. It is therefore impossible for the District to complete the required comprehensive evaluation of K.J. on the timeline ordered by the Hearing Officer.

## Claim for Relief

41. The El Dorado School District is an "aggrieved party" as that term is used in the IDEA because the Hearing Officer in the first Due Process hearing decided that the District denied K.J. FAPE for two school years and improperly dismissed him from special education.

42. Pursuant to 20 U.S.C.§ 1415(i)(2), a party aggrieved by the findings and decision of a State Educational Agency Hearing Officer has the right to bring a civil action in any federal district court of competent jurisdiction.

43. EDSD seeks review of the final decision in Arkansas Department of Special Education Case Number H-20-29.

44. EDSD asks this Court to: (a) receive the records from the administrative proceedings in this case, (b) receive additional evidence; (c) reverse the decision of the Hearing Officer that EDSD failed to provide K.J. FAPE for two school years and improperly dismissed him from special education; and (d) reverse the Hearing Officer's order for a comprehensive

evaluation of K.J. on or before July 15, 2021, and to provide him 50 hours of compensatory education.

WHEREFORE, El Dorado School District respectfully requests that this Court receive and review the records of the administrative proceedings in Due Process Hearing Case H-20-29, receive such additional evidence as may be necessary to the Court's decision, reverse the decision of the Hearing Officer in Case No. H-20-29, and grant the El Dorado School District such further relief as the Court deems appropriate.

                                    Respectfully submitted,

                                    Christopher Heller (ABA No. 81083)
                                    Khayyam M. Eddings (ABA No. 2002008)
                                    Friday, Eldredge & Clark, LLP
                                    400 West Capitol Avenue, Suite 2000
                                    Little Rock, AR 72201
                                    Telephone:  501-370-1417
                                    Facsimile:   501-537-2903
                                    Email:        heller@fridayfirm.com
                                                    keddings@fridayfirm.com

                             By: _____
                                    Christopher Heller
                                    *Attorneys for El Dorado School District*